UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RICHARD A. WHITE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CAUSE NO.  3:11-CV-417 JD |
| | ) |
| ROSE VAISVILAS, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## **OPINION & ORDER**

Plaintiff Richard White filed his complaint in this case pursuant to 42 U.S.C. § 1983, while he was a prisoner confined at the Westville Correctional Facility, alleging deliberate indifference to his serious medical needs. [DE 1]. Mr. White has now been released from custody and resides in South Bend, Indiana. [DE 29, DE 43].[1]

This matter is before the court on the plaintiff's motion to withdraw his case without prejudice, or in the alternative to appoint an attorney to represent him. [DE 46]. Mr. White states in his motion that he cannot afford an attorney and has been unable to obtain one, that he is ill and in constant pain, that he has no knowledge of the Federal Rules of Civil Procedure and has no means to research his case himself. Mr. White asks the court to either appoint him counsel or allow him to withdraw his case without prejudice.

---

[1] On April 11, 2012, Mr. White filed a notice of change of address stating that he "now lives at the following address, RICHARD WHITE 1749 Vernon St. South Bend, In 46613"[DE 29]. On October 25, 2012, Mr. White filed a non prisoner motion for leave to proceed *in forma pauperis* [DE 43], purportedly with a different mailing address — 1141 East Calvert Street, South Bend, IN 46613. The clerk apparently changed Mr. White's mailing address on the docket, and while the order granting *in forma pauperis* status was apparently delivered to Mr. White at the new address, a subsequent order of the court was returned from that address as undeliverable [DE 47]. Mr. White's motion to withdraw his complaint [DE 46] was apparently mailed from the Vernon Street address [DE 46 at 2]. This court will direct that copies of this order be mailed to Mr. White at both addresses.

In regard to his request that the court appoint counsel for him, Mr. White requested appointment of counsel twice before. The court denied Mr. White's first request because he did not assert that he had tried to find counsel on his own. The court concluded its order by stating that "[t]he Plaintiff may renew his motion upon making a showing of such diligence." [DE 31 at 1]. Shortly afterward, Mr. White filed a second request for appointment of counsel, entitled "motion to resubmit an appointment of counsel" [DE 32], in which he stated that he "contacted several law firms on his own and has been denied assistance." [DE 32 at 1]. Mr. White attached letters of rejection from two attorneys who responded in writing to his requests that they represent him. [DE 32 at 3-4]. In his motion, Mr. White also stated that he had "contacted by phone several firms and has been denied, Sweeny Pfeifer and Morgan and Stesiak . . . Indiana Bar Assn. for St. Joseph County . . . Hedlak and Benchik Law Firm . . . Blackburn and Green Attorneys[.]" (*Id.*). The court denied Mr. White's second motion for appointment of counsel, reasoning that his case did not involve exceptional circumstances, and that Mr. White had articulated his claims quite plainly to date and had proceeded diligently with his case. [DE 39].

Mr. White's circumstances have now changed because he has been released from custody and no longer has access to legal materials at the institutional law library or assistance from inmate clerks at the law library, and because he states that his physical condition has deteriorated. Because Mr. White's circumstances have changed since this court evaluated his initial requests for appointment of counsel, the court will reassess whether his present circumstances might justify an effort by the court to find counsel willing to represent him.

There is no constitutional or statutory right to court-appointed counsel in federal civil litigation. *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007). However, the federal *in forma pauperis*

2

statute provides that "[a] court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). Mr. White is proceeding *in forma pauperis* in this case [DE 4, DE 45], so he is eligible for consideration under § 1915(e)(1). The plain language of the statute technically does not allow the court to *appoint* – i.e., compel – an attorney to represent the indigent over the attorney's objection; it simply allows the court to *ask* an attorney to represent the indigent *pro bono publico*. *Mallard v. U.S.D. for S. D. Iowa*, 490 U.S. 296, 307 (1989). However, since courts are generally successful in their endeavor to find a willing attorney, there is nothing wrong, as a practical matter, with calling it an "appointment." *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 429 (7th Cir. 1991).

In exercising its discretion to determine whether to recruit an attorney for Mr. White, the court is guided by two inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself? *Pruitt*, 503 F.3d at 654 (citing *Farmer v. Haas*, 990 F.2d 319, 321-22 (7th Cir. 1993)). Addressing the first question, the court finds that Mr. White made a reasonable attempt to obtain counsel, as established by his submissions in support of his second motion for appointment of counsel. [DE 32]. Mr. White asked several law firms or individual attorneys to represent him, with no takers, so his efforts satisfy the court that he has met the first prong of the *Farmer* test.

The second prong of the test is really a two-fold inquiry. *Pruitt*, 503 F.3d at 655. The court must consider the related questions of the difficulty of the plaintiff's claims and the plaintiff's competence to litigate those claims himself. *Id.* The court begins with the difficulty of the plaintiff's case. "[T]here are no hard and fast rules for evaluating the factual and legal difficulty of the

3

plaintiff's claims." *Id.* The Seventh Circuit has, however, indicated that cases involving complex medical evidence are typically more difficult for *pro se* plaintiffs. *See, e.g., Jackson v. Cnty. of McLean*, 953 F.2d 1070, 1073 (7th Cir. 1992) (where the testimony of a physician or health professional would be necessary to prove that the manner in which plaintiff was treated "constituted a substantial departure from the accepted professional practice[,]" recruitment of counsel is warranted); *Merritt v. Faulkner*, 697 F.2d 761, 765 (7th Cir. 1983) (recruitment of counsel was warranted by plaintiff's inability to investigate crucial facts, such as "the cause of Merritt's blindness, and the standards of medical practice" in relevant areas).

After screening, this case is before the court on the Plaintiff's Eighth Amendment claim that Defendants Rose Vaisvilas, Barbara Brubaker, M.D., and Kevin Kremb, M.D., denied him needed treatment for Hepatitis C, and on a claim against Defendant Barney Turnipseed on the Plaintiff's Eighth Amendment claim that he denied the Plaintiff a prescribed medical diet. [DE 9 at 6]. The claim against Defendant Turnipseed appears to be a simple claim that would not likely require expert testimony. That claim will most likely rest on documentary proof that a doctor prescribed a medical diet and proof that Defendant Turnipseed, a food service supervisor, refused to honor a diet that had been prescribed by a doctor.

The claims against Defendants Vaisvilas, Brubaker, and Kremb, however, are more complex. According to the complaint and its attachments, Defendants Vaisvilas, Brubaker, and Kremb did not provide Mr. White with treatment for Hepatitis C even though his blood work showed that he had elevated numbers justifying treatment. Mr. White alleges that the lack of treatment "has already effected Plaintiff's liver — giving him cirrhosis and spurred on kidney failure and congestive heart failure . . . [which] . . . is causing daily pain both physical and emotional . . ." [DE 1 at 5].

The plaintiff's medical treatment claim is similar to those contained in the cases cited above.

In order to prevail, Mr. White will likely have to prove at some point that his hepatitis C was serious enough to require treatment and that Defendants Vaisvilas, Brubaker, and Kremb's response to his hepatitis C constituted a substantial departure from accepted medical judgment, practice or standards. "For a medical professional to be liable for deliberate indifference to an inmate's medical needs, he must make a decision that represents such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (quotation marks and citations omitted), *see also Whetstone v. Ellers*, 447 Fed. Appx. 286 (3d Cir. 2011) (noting that the question of whether a doctor exercised appropriate "professional judgment" is integral to the deliberate indifference inquiry). It will be difficult for Mr. White to make such a showing proceeding *pro se*. On these particular facts, a lawyer's assistance in recruiting and investigating appropriate professional witnesses may be almost indispensable.

The next question is the competency of the plaintiff to litigate his claims himself, given their difficulty. To limit the focus of this inquiry to the plaintiff's competency to try his own claims – in other words, to conduct an actual trial – would be an error. "The question is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Pruitt v. Mote*, 503 F.3d at 655.

The court has already noted that the sort of evidence-gathering which must take place here, including investigating accepted standards of professional practice, is of a sort that is inherently difficult for persons with no legal education to perform. Beyond that, the court has taken into consideration "the plaintiff's literacy, communication skills, educational level, and litigation

5

experience." *Pruitt*, 503 F.3d at 655. The plaintiff's complaint is well drafted, as are some of his submissions before his release from the Indiana Department of Correction. But Mr. White is no longer confined at the Westville Correctional Facility, and no longer has access to legal materials in the law library or to assistance from the inmate law library clerks. While Mr. White is literate and has communicated quite well with the court, even after his release, nothing in the record before the court suggests that he is capable of conducting the sort of evidence-gathering which must take place here, including investigating accepted standards of professional practice.

Another component of Mr. White's competency to litigate his claims himself, is his current physical condition. Mr. White asserts in his motion for appointment of counsel, or in the alternative to withdraw his complaint, that in addition to having no means to research his case he is "very ill and under several Doctor[s'] care and heavily medicated and is in constant pain." [DE 46 at 1]. Mr. White's submissions are sufficient to raise a question of whether his physical condition might preclude him from being able to respond to a motion for summary judgment or prepare for trial, but are not sufficient to conclusively establish that he would be unable to do so. Accordingly, the court will allow Mr. White the opportunity to provide additional evidence on this question, as well as on the question of whether he is capable of litigating his own claims, given their degree of difficulty, including the tasks that normally attend litigation such as gathering evidence, preparing and responding to motions and other court filings, and preparing for trial.

The court construes appointment of counsel as the primary goal of Mr. White's motion for appointment of counsel or to withdraw his case without prejudice, with dismissal of his complaint without prejudice pursuant to Fed. R. Civ. P. 41(a) as a less favored alternative. But if the court grants the Plaintiff's request to withdraw his complaint without prejudice he may not be able to

refile it as a result of the operation of the statute of limitations. Because there is no federal statute of limitations for actions filed pursuant to § 1983, courts apply the most appropriate state statute of limitations. *Burrell v. City of Matoon*, 378 F.3d 642 (7th Cir. 2004). "In general, the limitations period in a § 1983 case is governed by the personal injury laws of the state where the injury occurred." *Kelly v. City of Chicago*, 4 F.3d 509 (7th Cir.1993). Section 1983 claims are considered as personal injury claims for purposes of determining the applicable state statute of limitations. *Wilson v. Garcia*, 471 U.S. 261 (1985). "Indiana law requires that any action for injuries to the person or character must be commenced within two years after the cause of action accrues. I.C. 34-11-2-4 (formerly Ind. Code § 34-1-2-2(1))." *Doe v. Howe Military School*, 227 F.3d 981, 988 (7th Cir. 2000); *see* also *Snoderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 894 (7th Cir. 2001) (Two-year statute of limitations "is applicable to all causes of action brought in Indiana under 42 U.S.C. § 1983").

Mr. White filed his complaint on October 25, 2011, and the events of which he complains occurred between May and September of 2011. [DE 1 at 4a-4c]. The statute of limitations does not appear to have run yet on any of Mr. White's claims, but if his complaint is dismissed without prejudice, he would only have a limited amount of time within which to refile his complaint within the statute of limitations. Moreover, Mr. White would potentially incur another filing fee by refiling his complaint at a later time. In any event, until the question of counsel is resolved the court need not address Mr. White's alternative request. If necessary, the court will address that question at a later time.

For the foregoing reasons, the court:

1. Takes the Plaintiff's request for appointment of counsel under advisement, and AFFORDS

the Plaintiff until May 10, 2013, to supplement his motion by providing additional information on two issues: (1) his ability to perform the sort of evidence-gathering necessary to prove that his hepatitis C was serious enough to require treatment and that Defendants Vaisvilas, Brubaker, and Kremb's response to his hepatitis C constituted a substantial departure from accepted medical judgment, practice or standards; and (2) medical documentation or other evidence that supports his claim that his current medical condition makes it impossible for him to proceed with this case without assistance of counsel. The court ADVISES the Plaintiff that, as an example, sworn statements from any or all of the several doctors he states are treating him would be helpful in making this determination as would a list of the medications he is taking along with a statement of the reasons he has been prescribed those medications;

2. Also takes the Plaintiff's request for a dismissal of his complaint without prejudice under advisement. The court ADVISES the Plaintiff that it will only rule on the request for withdrawal of his complaint if it does not grant his request for appointment of counsel and further ADVISES him that, after having been cautioned that he may not be able to timely refile his complaint, he may withdraw the request for dismissal of his complaint if he wishes; and

3. DIRECTS the clerk to mail a copy of this order to the Plaintiff at 1749 Vernon St. South Bend, IN 46613, and at 1141 East Calvert Street, South Bend, IN 46613.

SO ORDERED.

ENTERED:   April 8, 2013

/s/ JON E. DEGUILIO
Judge
United States District Court

8